IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONTEZ ARTIS (B-84281), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20 C 02673 |
| vs. ) | |
| ) | |
| WALTER NICHOLSON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Montez Artis, who is imprisoned in the Illinois Department of Corrections, filed a *pro se* lawsuit under 42 U.S.C. § 1983 against four Stateville Correctional Center officials—former Warden Nicholson, former Placement Coordinator Rabideau, former Assistant Warden of Operations Lamb, and Assistant Warden of Operations Miles—and Nursing Director Miller concerning his low bunk and shower permits. In response to the motion, Mr. Artis advised that he wants to dismiss his claims against defendant Miles. *See* Dkt. 123 at 11; Dkt. 124 at 29. And he does not argue his shower-permit claim in response to defendant Miller's motion for summary judgment. *See* Dkt. 126; Dkt. 125 ¶ 16. The Court therefore dismisses those claims with prejudice.

## Facts

This lawsuit concerns events Stateville from September 2018 to May 2019. The evidence, considered in the light most favorable to Mr. Artis, reflects that a physician issued him a low bunk permit on September 20, 2018 because of "back pain." Dkt. 118, IDOC Defs.' L.R. 56.1 Stmt. of Facts (IDOC SOF) ¶ 10; Dkt. 114, Miller L.R. 56.1

Stmt. of Facts (Miller SOF) ¶ 6. Corrections staff are responsible for placing a prisoner in a low bunk within his assigned cell after a low bunk permit is issued. Miller SOF ¶ 7. But Mr. Artis was not moved to a low bunk. *See id.* ¶ 10.

According to former Placement Coordinator Rabideau, Mr. Artis was not moved to a low bunk because, on or about October 4, 2018, she received a letter from him advising that he did not need to be moved despite having a low bunk permit. IDOC SOF ¶¶ 11-12. But defendants have not produced a copy of the alleged letter, *see* Dkt. 118-7, Ex. 7 to IDOC SOF (explaining that letter could not be located), and Mr. Artis denies writing such a letter, *see* Dkt. 124, Pl. Resp. to IDOC SOF ¶ 11.

Approximately three weeks later, on October 23, 2018, Mr. Artis slipped while getting out of the top bunk in his cell. Miller SOF ¶ 10. He submitted a grievance about the incident the next day, stating that he had written to Warden Nicholson on October 4, 2018, "informing him that I have a low bunk permit that has not been enforced for 2 weeks!" Dkt. 123 at 43, Pl. Ex. M.[1] Mr. Artis also explained that he had difficulty climbing in and out of the top bunk without pain or discomfort. *Id.* He checked a box on the grievance indicating that it was submitted as an emergency, but emergency review was declined on November 5, 2018. *Id.*; Pl. Resp to IDOC SOF ¶ 17. The section of the grievance declining emergency review reflects what appears to be the name Walter Nicholson, written in script, followed by the circled initials "EW." Pl.

---

[1] Mr. Artis's Exhibit M is a copy of his October 24, 2018 grievance. Defendants contend that Mr. Artis did not produce the grievance during discovery. Dkt. 132, IDOC Defs.' Reply at 6. But Exhibit M bears a DOC Bates stamp number, so it appears that the defendants had it. The document also is necessary given that the Stateville officials cited only the response to the grievance, which, without context, is confusing at best. *See* IDOC SOF ¶¶ 17, 18. The Court therefore has considered the copy of the grievance submitted by Mr. Artis. *See* Fed. R. Evid. 106.

Ex. M; *see* Pl. Resp. to IDOC SOF ¶ 18.

Mr. Nicholson, who is no longer Stateville's warden, stated in a sworn declaration that he has no recollection of Mr. Artis's letter or grievance. IDOC SOF ¶¶ 15, 16. Mr. Nicholson also stated that he did not open his own mail when he was warden. *Id.* ¶ 14.

In late October or early November 2018, Mr. Artis contacted a lawyer for assistance with enforcement of his low bunk permit. *See* IDOC SOF ¶ 20. By e-mail dated November 27, 2018, counsel contacted IDOC's Deputy Chief Legal Counsel Kelly Presley to determine whether "Mr. Artis has received proper placement consistent with his Low Bunk permit[.]" *Id.* ¶ 22; Dkt. 118-10 at 6, Ex. 10 to IDOC SOF (Artis v. Nicholson Supp 000071) ("IDOC emails"). Attorney Presley emailed then-Assistant Warden of Operations Lamb, asking him to look into the status of Mr. Artis's low bunk permit. *See id.* ¶ 23; IDOC emails at 000071. Mr. Lamb responded that Mr. Artis had a valid permit. *See* IDOC SOF ¶¶ 25, 31. Mr. Lamb also reported:

> This AWO went to cell D-551 where [Mr. Artis] is housed and did discover [Mr. Artis] on the top bunk. This AWO asked [Mr. Artis] to see his low bunk permit. [Mr. Artis] stated that he was good. This AWO stated one last time, to show this AWO his low bunk permit. [Mr. Artis] jumped down to the floor on his feet and retrieved his permit and handed the permit to this AWO . . . . This AWO asked [Mr. Artis] why he was not on the bottom bunk? [Mr. Artis] stated that he was good and didn't need the bottom bunk. This AWO then asked why the medical practitioner gave him a low bunk permit if he supposedly didn't need one? [Mr. Artis] stated, "I don't know but I did not need it."

IDOC emails at 000071; *see* IDOC SOF ¶¶ 26-35. Attorney Presley replied to Mr. Lamb, "You may want to alert the HCU so that the permit can be rescinded" and also asked Mr. Lamb to "notify the HCU that Artis reports that he does not need the low bunk permit, and that it should be rescinded if there is no medical need for it[.]" IDOC emails at 000070-71; *see* IDOC SOF ¶ 39. It appears that Mr. Lamb forwarded this email to

3

Nursing Director Miller. *See* IDOC emails at 000070; *see also* IDOC SOF ¶ 40. Ms. Miller responded by email, "I will have that rescinded sir," IDOC emails at 000070, and added a note to Mr. Artis's file stating, "Per Operations Warden, offender advised he does not need low bunk permit. Low bunk permit voided on 11/30/18." IDOC SOF ¶ 42. The permit itself also reflects, "VOID on 11/30/18." *Id.* ¶ 41.

Ms. Miller contends that the only role she "played as it relates to [Mr. Artis's] low bunk permit is that she was contacted by the warden of operations and instructed to void [the] permit[.]" Miller SOF ¶ 12. But she also asserts, rather inconsistently, that she "did not void [Artis's] low-bunk permit. She did not have the authority to void medical permits." *Id.* ¶¶ 14, 16. "[S]he was just doing her job when she noted in [Mr. Artis's] medical records that [his] low-bunk permit was void." *Id.* ¶ 13.

Mr. Artis, for his part, contends that Mr. Lamb lied when he reported that he came to Mr. Artis's cell, saw him jump from the top bunk, and talked to him about his low bunk permit. *See* Pl. Resp. to IDOC SOF ¶¶ 26-36. According to Mr. Artis, the encounter never occurred. *Id.*

On May 16, 2019, Mr. Artis submitted a grievance after he slipped again while "exiting top bunk." IDOC SOF ¶ 50 (citing Dkt. 1, pg. 46-47). Mr. Artis explained in the grievance that he had "recently learned that on 11-30-18 his low bunk permit was voided because he called the lawyers from the class action lawsuit because Stateville [agents/employees] was refusing to place [him] in low bunk[.]" *Id.* ¶ 51. This lawsuit followed.

## Discussion

The Stateville officials and Nursing Director Miller have separately moved for

4

summary judgment. The Stateville officials argue that they are entitled to summary judgment on three grounds: (1) Mr. Artis failed to exhaust available administrative remedies before initiating this lawsuit, Dkt. 119, IDOC Defs.' Mem. in Support of Mot. for Summ. J. (IDOC MSJ) at 9-11; (2) he cannot prove that they were deliberately indifferent to his serious medical need because "a medical professional was responsible for the determination to rescind" the low bunk permit, *id.* at 3-5; and (3) he cannot prove that his low bunk permit was voided for a retaliatory reason, *id.* at 5-9. Like the Stateville officials, Ms. Miller asserts an exhaustion defense. Dkt. 115, Miller Mem. in Support of Mot. for Summ. J. (Miller MSJ) at 8-9. She also argues that she is entitled to summary judgment because Mr. Artis cannot prove (1) that she was deliberately indifferent to his serious medical need, *id.* at 2-8, or (2) that he is entitled to punitive damages, *id.* at 9-10.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). After the moving party has identified grounds for its motion, the opposing party must present "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter; it determines only whether there is a factual dispute for trial. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

**A.   Failure to exhaust**

The Prison Litigation Reform Act (PLRA) requires imprisoned persons to exhaust

available administrative remedies before filing a federal lawsuit about prison conditions. 42 U.S.C. § 1997e(a). To properly exhaust administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). In Illinois, an imprisoned person must file a written grievance "within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a).

The Stateville officials argue that Mr. Artis did not timely exhaust his claims that his low bunk permit was improperly revoked on November 30, 2018, because (1) his October 24, 2018 grievance pre-dated the revocation and, as such, did not mention it; and (2) his May 16, 2019 grievance was filed six months after the permit was revoked. IDOC MSJ at 10. In his May 15, 2019 grievance, however, Mr. Artis explained that he "*recently learned* that on 11-30-2108 [sic] his low bunk permit was voided because he called" a lawyer to enforce the permit. *See* IDOC SOF ¶ 51 (emphasis added); *see also* Dkt. 123, Pl. Resp. to IDOC MSJ at 25. The Stateville officials do not address this point in their reply.

"Failure to exhaust administrative remedies is an affirmative defense" that the defendants have the burden of proving. *Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022). Given the defendants' burden, they cannot simply ignore Mr. Artis's statement in his grievance about his "recent[ ]" discovery of alleged permit revocation. And they do not offer any evidence regarding the timing of the communication to Mr. Artis that his low bunk permit had been revoked. Under the circumstances, Mr. Artis's statement regarding his "recent" discovery of the alleged revocation is sufficient to

establish the timeliness of grievance, as he appears to have submitted it within 60 days of his discovery of the events giving rise to the grievance. See 20 Ill. Admin. Code § 504.810(a).

The Court also notes that the Stateville officials do not contend that Mr. Artis failed to exhaust his claims that Mr. Nicholson and Ms. Rabideau failed to honor his requests for a low bunk *before* the permit was revoked. See IDOC MSJ at 9-11. Counsel "are responsible for advancing the facts and argument entitling [their clients] to relief." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). The Court will not make arguments for them.

Ms. Miller's arguments about exhaustion fare no better. In her opening brief, she merely sets forth the black-letter law of exhaustion and then argues, with a single citation to the operative complaint: "Plaintiff has failed [to] plead, much less put forth any evidence proving that he exhausted his administrative remedies related to the issues before the Court. [Dkt. #10]. As such, Plaintiff's claims against Nurse Miller are inadequate as a matter of law." Miller MSJ at 9. These summary assertions do not satisfy Ms. Miller's burden on the exhaustion issue and amount to a forfeiture of the defense. *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("Seventh Circuit precedent is clear that perfunctory and undeveloped arguments . . . are waived.") (internal quotation marks omitted). The Court also notes that a plaintiff is not required to anticipate and "plead around" potential affirmative defenses like exhaustion, so the fact that Mr. Artis's complaint does not discuss exhaustion is of no consequence.

Ms. Miller's belated argument in her reply brief that Mr. Artis failed to exhaust his claim against her because he did not name her in his grievances about his low bunk

7

permit, *see* Miller Reply at 13-14, does compel a different outcome, for two reasons. First, "arguments raised for the first time in a reply brief are waived." *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020). Second, an imprisoned person is not required to name names for a grievance to satisfy the PLRA's exhaustion requirement when the information about the identity of the decision-maker is within control of the prison and is difficult for the prisoner to discover. *See Perez v. Fenoglio*, No. 3:11-cv-819-NJR-DGW, 2016 WL 11464676, at *7 (S.D. Ill. July 20, 2016). That is certainly the case here.

For these reasons, the defendants are not entitled to summary judgment on the defense of exhaustion.

**B.     Deliberate indifference**

To prevail on a claim under the Eighth Amendment in this context, a plaintiff must prove: (1) he suffered from an objectively serious medical condition, and (2) the defendant knew about and was deliberately indifferent to the condition. *See Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019). Mr. Artis bears the burden of proof on each of these elements. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 747 (7th Cir. 2017) (explaining that the plaintiff has burden of proof on elements of Eighth Amendment deliberate indifference claim). Thus, to survive summary judgment as to a particular defendant, Mr. Artis is required to identify facts from which a reasonable jury could find that the defendant knew a low bunk was medically necessary but was deliberately indifferent to that need.

**1.     Serious medical need**

The Stateville officials and Ms. Miller argue that they are entitled to summary

8

judgment because Mr. Artis cannot establish that he suffered from an objectively serious medical need. *See* IDOC MSJ at 4-5; Miller MSJ at 4-5. A medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotation marks and citation omitted). It is undisputed that a physician issued Artis a low bunk permit for "back pain" on September 20, 2018. That is sufficient, for purposes of summary judgment, to establish Artis's serious medical need for a low bunk. *See, e.g., Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013) (evidence that prisoner was being treated for back pain, along with prisoner's complaints about his inability to access top bunk, were enough to create triable issue of fact concerning medical need for low bunk).

## 2. Deliberate indifference

"Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776-777 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Non-medical prison personnel may exhibit deliberate indifference by "intentionally interfering with" prescribed medical care, *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976), or consciously choosing to disregard a doctor's directions, *Zentmyer v. Kendall County*, 220 F.3d 805, 812 (7th Cir. 2000). Medical personnel may exhibit deliberate indifference by failing to use professional judgment when making treatment decisions. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021).

9

### a. October 2018 bunk assignment

Mr. Artis seeks to hold former Warden Nicholson and former Placement Coordinator Rabideau liable for failing to ensure he received a low bunk after he was granted a low bunk permit on September 20, 2018. See Pl. Resp. to IDOC MSJ at 4. The Stateville officials acknowledge this claim, see IDOC MSJ at 3 ("Plaintiff alleges that Defendants denied him a low bunk in October and November 2018"), but simply assert that "there is no evidence that Defendants denied Plaintiff placement in a low bunk pursuant to his valid medical permit." IDOC MSJ at 4.

Mr. Artis has identified admissible evidence sufficient to permit a reasonable jury to find that Mr. Nicholson and Ms. Rabideau knew of and intentionally failed to ensure that he received a bunk assignment consistent with his low bunk permit. In particular, Mr. Artis points to his October 4, 2018 letter to Nicholson and his October 24, 2018 grievance and argues that the record permits a finding that Mr. Nicholson knew Mr. Artis's low bunk permit was not being honored, even though Mr. Nicholson says he does not recall the letter and did not open his own mail. Pl. Resp. to IDOC MSJ at 9-10. The Court is inclined to agree insofar as Mr. Nicholson's signature (even if by proxy) on the October 24, 2018 grievance suggests that the grievance passed through the Warden's office and that he may have delegated his authority to someone else.

The Stateville officials do not engage Mr. Artis's argument, see Dkt. 132, IDOC Reply, and Nicholson's delegation of authority does not necessarily insulate him from liability. See *Taylor v. Wexford v. Health Sources, Inc.*, No. 16 C 3464, 2022 WL 4329025, at *16 (N.D. Ill. Sept. 19, 2022) (explaining that a warden cannot "avoid individual liability simply because others reviewed or responded to [a prisoner's]

10

grievances"). As a result, Mr. Nicholson has not established that he is entitled to summary judgment. *See, e.g., Bolling v. Carter*, 819 F.3d 1035 (7th Cir. 2016) (reversing grant of summary judgment for correctional officers where they refused to move inmate to low bunk despite inmate's fall while attempting to reach top bunk and his subsequent acquisition of low bunk permit); *Knox v. Butler*, No. 3:17-cv-00092-SMY, 2020 WL 4933656, at *3 (S.D. Ill. Aug. 24, 2020) (denying summary judgment to non-medical prison personnel who failed to honor prisoner's medical permits).

As to Ms. Rabideau, Mr. Artis points to an October 4, 2018 letter that, he says, asked her to "honor his low bunk medical permit." Pl. Resp. to IDOC MSJ at 11-12. Ms. Rabideau recalls the content of the letter differently, *see* IDOC MSJ at 4, but her recollection alone is not enough to permit entry of summary judgment in her favor. *See Runkel v. City of Springfield*, 51 F.4th 736, 741-742 (7th Cir. 2022) ("summary judgment cannot be used to resolve swearing contests between litigants") (quoting *Johnson v. Advocate Health & Hosp. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)). In addition, Mr. Artis has identified a discrepancy between Ms. Rabideau's recent declaration—in which she says that he did not receive a low bunk because he did not want a low bunk—and the reason she gave in response to his October 2018 grievance—specifically, "Per Placement Officer . . . it is not always possible to immediately move offenders once a new low bunk permit is received[.]" Pl. Resp. to IDOC MSJ at 14. This shift of justifications is sufficient to give rise to a genuine factual dispute. Consequently, Ms. Rabideau is not entitled to summary judgment.

### b. November 30, 2018 revocation of low bunk permit

Mr. Artis seeks to hold former Assistant Warden of Operations Lamb and Nursing

11

Director Miller liable in connection with the revocation of his low bunk permit in November 2018. *See* Pl. Resp. to IDOC MSJ at 16; Pl. Resp. to Miller MSJ at 2. Mr. Lamb suggests that he cannot be held liable for revocation of the permit because "a medical professional was responsible for the determination to rescind that permit." IDOC MSJ at 4. According to Mr. Lamb, all he did was "convey[] Plaintiff's statement" that he did not need a low bunk "to IDOC legal and Defendant Miller." *Id.* But Mr. Artis says the encounter described by Mr. Lamb never occurred. *See* Pl. Resp. to IDOC MSJ at 16. If a jury believed Mr. Artis's version of the events, as it reasonably could, it could find Mr. Lamb made up the story to interfere with Mr. Artis's medical care.

Mr. Lamb asks the Court to ignore Mr. Artis's version of the events based on the so-called "sham affidavit rule." *See* IDOC Reply at 7-9. Mr. Lamb has not, however, identified the portions of Mr. Artis's deposition that he contends are inconsistent with Mr. Artis's present position. *See Teamsters Local Union 727 Health & Welfare Fund v. De La Torre Funeral Home & Cremation Servs., Inc.*, No. 14 C 9813, 2017 WL 3478820, at *6 (N.D. Ill. Aug. 14, 2017) (Kennelly, J.) (discussing sham-affidavit rule). In fact, Mr. Artis's denial of the encounter as described by Mr. Lamb is entirely *consistent* with Mr. Artis's deposition testimony:

> Q: After you received the low bunk permit, did you inform anyone that you did not need a low bunk permit?
>
> A: No, I didn't . . . . Why would I do that? I'm calling lawyers, and I'm speaking to the sergeants, I'm writing letters to the wardens, I'm writing affidavits, and I'm writing grievances about needing a low bunk permit. Why would I tell anybody I don't need a low bunk permit? None of this makes sense.

*See* Pl. Resp. to IDOC SOF ¶ 26 (citing Artis Dep. 63:10-20). In sum, Mr. Artis's denial is sufficient to give rise to a genuine factual dispute, and as a result Mr. Lamb is not

12

entitled to summary judgment.

There are also genuine factual disputes regarding Ms. Miller's involvement with Mr. Artis's low bunk permit. Medical decisions based on a complete lack of medical judgment are a hallmark of a deliberate indifference claim. *See Stewart*, 14 F.4th at 763 (explaining that to prevail on deliberate indifference claim "against a medical professional, a prisoner must demonstrate that the medical professional's response was so inadequate that it demonstrated an absence of professional judgment"). Ms. Miller's arguments suggest that she did not inquire into Mr. Artis's medical need for a low bunk permit after Mr. Lamb—who is not a medical professional—asked her to revoke a permit that a medical professional had previously issued. Ms. Miller argues, in particular, that "there is no evidence before the court that [she] was subjectively aware of [Mr. Artis's] need," and she seems to adopt the accuracy of Mr. Artis's contention that she "voided his low bunk permit at the direction of her supervisor . . . ." Miller MSJ at 6-7. Ms. Miller also contends that she did not have the authority to void medical permits even though e-mails suggest otherwise. *See also* IDOC Emails 000070 (directing Ms. Miller to rescind permit "if there is no medical need for it"). These inconsistent arguments are somewhat perplexing.

In addition, a prison nurse's decision to deny care ordered by a doctor can support an inference of deliberate indifference. *Machicote v. Roethlisberger*, 969 F.3d 822, 828-29 (7th Cir. 2020). It is undisputed that a doctor issued Mr. Artis's low bunk permit just two months before Mr. Lamb asked Ms. Miller to rescind it. Mr. Artis contends, and the record seems to support, that Ms. Miller did not refer him to a doctor before revoking the permit (or having it revoked). *See* Pl. Resp. to Miller MSJ at 11.

13

For these reasons, Ms. Miller is not entitled to summary judgment.

**C.     First Amendment retaliation**

Mr. Artis's retaliation claim stems from the decision to revoke his low bunk permit after a lawyer inquired about enforcement of the permit. The record does not suggest that either Mr. Nicholson or Ms. Rabideau was involved in the decision to revoke the permit, and Mr. Artis has confined his claim against Ms. Miller to deliberate indifference to a serious medical need. *See* Pl. Resp. to Miller MSJ at 2. The Court therefore considers only whether Mr. Artis identified evidence that creates a triable issue of fact regarding whether Mr. Lamb caused Mr. Artis's low bunk permit to be revoked in retaliation for Mr. Artis's exercise of his First Amendment rights.

To establish a claim for retaliation, Mr. Artis must be show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter protected activity in the future; and (3) the protected activity was at least a motivating factor in the defendant's decision to retaliate. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). Construing the facts in a light most favorable to Mr. Artis, a reasonable jury could find he has satisfied each of these elements.

An imprisoned person has a First Amendment right to file truthful grievances and lawsuits. *Harris v. Walls*, 604 F. App'x 518, 521 (7th Cir. 2015). Contacting a lawyer to advocate on his behalf is part and parcel of that right. If a jury believed Mr. Artis's version of the events—as it reasonably could—it could find that Mr. Lamb made up a story about Mr. Artis not needing a low bunk permit after learning of the lawyer's phone call and then conveyed that false story to Ms. Miller, causing a revocation of the permit. A reasonable jury could find that this sort of conduct could deter an imprisoned person

14

from trying to enforce a medically necessary accommodation. *See, e.g., Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (finding that prisoner "presented a chronology of events from which retaliation could be inferred" when, almost immediately after he "[made] his protected complaint," the prisoner was subject to even more onerous, related conduct). Mr. Lamb therefore is not entitled to summary judgment on Mr. Artis's retaliation claim.

**D.     Punitive damages**

Punitive damages are recoverable on a claim under section 1983 if the plaintiff proves that the defendant acted with reckless or callous indifference to the plaintiff's constitutional rights or was motivated by evil intent. *Smith v. Wade*, 461 U.S. 30, 39-51 (1983). Because there is a triable issue of fact about whether Ms. Miller (as well as the Stateville officials) acted with reckless disregard of Mr. Artis's health and safety, the defendants are not entitled to summary judgment on the question of punitive damages.

## Conclusion

For the reasons stated above, the Court denies the defendants' motions for summary judgment [113] [117] but also dismisses with prejudice Mr. Artis's shower permit claim and all his claims against defendant Miles. The following claims remain:

1. Deliberate indifference claims against Mr. Nicholson and Ms. Rabideau based on their alleged involvement in failing to ensure Mr. Artis received a low bunk promptly following the issuance of his low bunk permit on September 20, 2018;

2. Deliberate indifference claims against Mr. Lamb and Ms. Miller based on their alleged involvement in the revocation of Mr. Artis's low bunk permit on November 30, 2018;

3. A retaliation claim against Mr. Lamb stemming from his involvement in the revocation of Mr. Artis's low bunk permit on November 30, 2018; and

4. Mr. Artis's request for punitive damages.

At this point the case will have to be set for trial, and the Court will need to address the potential need for recruitment of counsel. Before doing that, the Court intends to discuss the possibility of settlement with the parties and, possibly, refer the case to the designated Magistrate Judge for a settlement conference. The case is set for a telephonic status hearing to discuss these points on February 10, 2023 at 8:45 a.m. Defense counsel are directed to make arrangements for Mr. Artis to participate. The following call-in number will be used: 888-684-8852, access code 746-1053.

Date: January 10, 2023

_____
MATTHEW F. KENNELLY
United States District Judge